UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

ELAINA OWENS.,

               Plaintiff,

        v.

NANCY A. BERRYHILL, Deputy
Commissioner of Social Security for Operations,

            Defendant.

Case No. C18-5488 RJB

ORDER AFFIRMING DENIAL OF
BENEFITS

## I.     INTRODUCTION

Plaintiff Elaina O. seeks review of the denial of her applications for supplemental security income and disability insurance benefits. Plaintiff contends the Administrative Law Judge ("ALJ") erred by (1) failing to properly evaluate Plaintiff's testimony; (2) failing to properly evaluate the opinions of Jeffrey Harrison, D.O.; (3) failing to properly evaluate the opinions of Norman Staley, M.D.; (4) failing to properly assess Plaintiff's residual functional capacity ("RFC"); and (5) failing to resolve a conflict between the *Dictionary of Occupational Titles* ("DOT") and the vocational expert's testimony. Pl. Op. Br. (Dkt. # 9) at 1. As discussed below, the Court AFFIRMS the final decision of Nancy A. Berryhill (the "Commissioner") and DISMISSES the case with prejudice.

*///*

## II.     BACKGROUND

**A.     Procedural History**

Plaintiff filed for Social Security disability benefits in January 2013.  Administrative Record ("AR") at 335-50.  In her applications, Plaintiff alleged a disability onset date of October 11, 2010.  *Id.* at 335, 344.  The Social Security Administration ("SSA") denied Plaintiff's claims initially and upon reconsideration.  *Id.* at 140-57, 160-75.

On July 10, 2014, ALJ Robert P. Kingsley held a hearing at which Plaintiff and a vocational expert testified.  *Id.* at 85-137.  ALJ Kingsley subsequently issued a decision finding Plaintiff not disabled and denying her benefits claim.  *Id.* at 179-91.

At Plaintiff's request, the Appeals Council reviewed ALJ Kingsley's decision.  *See id.* at 198-201.  On March 27, 2016, the Appeals Council issued an order vacating ALJ Kingsley's decision and remanding the matter for resolution of several issues.  *Id.*

ALJ Kelly Wilson conducted a second hearing in this matter on September 7, 2016.  *Id.* at 33-84.  Plaintiff and a vocational expert testified.  *See id.*  On March 24, 2017, ALJ Wilson issued a new decision once again finding Plaintiff not disabled and denying her claim for benefits.  *Id.* at 10-26.

**B.     The ALJ's Decision**

Utilizing the five-step disability evaluation process, 20 C.F.R. §§ 404.1520 & 416.920, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 11, 2010, the alleged onset date.  AR at 12.  The ALJ found that Plaintiff had a severe impairment of long thoracic nerve palsy with scapula winging, but did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *Id.* at 12-15.

ALJ Wilson determined that Plaintiff had the RFC to perform light work, except that she could lift and carry 10 pounds occasionally and five pounds frequently; sit, stand, and walk for six hours in an eight-hour work day; occasionally push and pull with the right upper extremity; frequently reach, handle, and finger if it is performed in front of her and not overhead; occasionally reach overhead with the right upper extremity; frequently climb ramps and stairs, but never ladders, ropes, or scaffolds; and must avoid concentrated exposure to vibrations and hazards. *Id.* at 16. Based on this RFC, the ALJ determined that Plaintiff could not perform any of her past relevant work. *Id.* at 24. However, Plaintiff had acquired work skills from her past relevant work that were transferable to other occupations. *Id.* at 24-25. Considering Plaintiff's age, education, work experience, RFC, and transferable work skills, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. *Id.* at 25. Based on these findings, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 11, 2010 through the date of the ALJ's decision. *Id.* at 25-26. The Appeals Council denied plaintiff's request for review making the ALJ's decision the Commissioner's final decision. *Id.* at 1-3.

### III. DISCUSSION

Pursuant to 42 U.S.C. § 405(g), the Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *See Thomas v.*

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

Plaintiff raises four issues in her challenge of the Commissioner's decision. First, Plaintiff argues that the ALJ erred in evaluating her symptom testimony. *See* Pl. Op. Br. at 1. Second, Plaintiff argues that the ALJ erred in evaluating the medical evidence. *Id.* On this issue, Plaintiff specifically contends that the ALJ erred in how she weighed the opinions of Jeffrey Harrison, D.O., and Norman Staley, M.D. *See id.* at 5-11. Third, Plaintiff argues that the ALJ erred in assessing Plaintiff's RFC. *Id.* at 1. Fourth, Plaintiff argues that the ALJ failed to address a conflict between vocational expert testimony and the DOT, which would undermine the ALJ's findings at step five of the disability evaluation process. *See id.* at 1, 14-18.

**A.      The ALJ Did Not Err in Discounting Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred in discounting her testimony as not entirely consistent with the record evidence. *See id.* at 11-13. The Court disagrees.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). At this stage, the claimant need only show that the impairment could reasonably have caused some degree of the symptom; she does not have to show that the impairment could be expected to cause the severity of the symptom alleged. *Id.* The ALJ found that Plaintiff met this first step because her medically determinable impairments could reasonably be expected to cause

the symptoms she alleged. AR at 17.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "'by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet.'" *Trevizo*, 871 F.3d at 678 (quoting *Garrison*, 759 F.3d at 1014-15). In evaluating the ALJ's determination at this step, the Court may not substitute its judgment for that of the ALJ. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). As long as the ALJ's decision is supported by substantial evidence, it should stand, even if some of the ALJ's reasons for discrediting a claimant's testimony fail. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).

The ALJ, finding no evidence of malingering, determined that Plaintiff's symptom testimony was "not entirely consistent with the medical evidence and other evidence." AR at 17. The ALJ gave four reasons for this determination: (1) the medical evidence did not support the severity of symptoms alleged; (2) Plaintiff tolerated her job immediately prior to the alleged disability onset date, and left that job for reasons unrelated to her alleged disability; (3) Plaintiff certified that she was ready, able, and willing to work during the disability period in order to collect unemployment benefits; and (4) Plaintiff made other inconsistent statements that undermined her reliability as an accurate historian. *See id.* at 18-20.

1.  Plaintiff's Symptom Testimony Was Inconsistent with the Medical Evidence

The ALJ first discounted Plaintiff's symptom testimony because the medical evidence did not support the severity of symptoms Plaintiff alleged. Although an ALJ may not discount a claimant's subjective reports of pain solely because they cannot be fully established by the objective medical evidence, *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001), an ALJ may discount the claimant's symptom testimony when it is inconsistent with or contradicted by

the medical evidence, *see Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). *See also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (holding that "[a]lthough lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor the ALJ can consider in his credibility analysis").

Plaintiff has not shown that the ALJ unreasonably interpreted the evidence here. Plaintiff claimed at the hearing that she could not lift her right arm at all. *See* AR at 49. But Dr. Harrison found that Plaintiff had full range of motion in her shoulder in November 2011. *See id.* at 18, 532 ("[Plaintiff] has grossly full range of motion with her shoulder . . . which is essentially painless today."). Plaintiff exhibited normal strength and sensation, as well. *See id.* at 18, 533, 540. Although her condition did not resolve, Plaintiff showed improvement in her symptoms following physical therapy. *See id.* at 18, 535 (noting "gradual improvement of [Plaintiff's] symptoms"), 537 (noting that Plaintiff's condition was stable, and that she had only mild scapular winging), 540 (noting that Plaintiff had "improved range of motion of the right shoulder, specifically much improved forward extension up over her head"), 673, 675, 686. As the ALJ noted, Dr. Harrison found that Plaintiff could abduct her arm to 90 degrees with internal rotation without difficulty, and was capable of performing the cross arm test. *See id.* at 18, 757. Plaintiff has consequently not shown that the ALJ erred in discounting her testimony for being inconsistent with the objective medical evidence.

2.      Plaintiff Tolerated Her Prior Job and Left It for Non-Disability-Related Reasons

The ALJ next discounted Plaintiff's testimony because the record showed that she could tolerate the duties of her pre-disability job, and left that job for non-disability-related reasons. AR at 19. This was a valid reason for discounting Plaintiff's symptom testimony. An ALJ may reasonably reject a claimant's symptom testimony where the claimant stopped working for

reasons other than her disability. *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001)

(upholding ALJ's rejection of claimant's testimony where, among other things, the claimant left

his prior job because he was laid off, not because of his alleged disability); *see also Wilson v.*

*Berryhill*, 732 F. App'x 504, 507 (9th Cir. 2018); *Kelly v. Berryhill*, 727 F. App'x 282, 284 (9th

Cir. 2018).

The ALJ reasonably interpreted the evidence here. The injury underlying Plaintiff's

alleged disability occurred in 2005 while Plaintiff was working as a heavy equipment operator.

*See* AR at 12, 93, 579, 587. Plaintiff was retrained in connection with her Labor and Industries

("L&I") workers' compensation claim, and went to work in emergency management for the City

of Puyallup. *See id.* at 16-17, 112, 447-49, 578. Plaintiff performed that job for approximately

two and a half years, but was fired for inappropriate behavior, including a confrontation with a

citizen while in a government vehicle, and several confrontational discussions with her

supervisor. *See id.* at 478-79. Although Plaintiff challenged this determination and the

Washington Employment Security Department determined that Plaintiff's actions leading to her

discharge did not rise to the statutory level of misconduct, *see id.* at 387-88, the ALJ reasonably

determined based on the evidence that Plaintiff was fired for her inappropriate behavior rather

than her alleged disability. *See Thomas*, 278 F.3d at 954. Consequently, the ALJ justifiably

concluded that Plaintiff stopped working because she was fired, not because her alleged

disability prevented her from continuing to work. *See* AR at 19. The ALJ did not err in rejecting

Plaintiff's symptom testimony on this basis. *See Bruton*, 268 F.3d at 828.

3. <u>Plaintiff Represented That She Was Able to Perform Full-Time Work When Collecting Unemployment Benefits</u>

The ALJ further supported her rejection of Plaintiff's testimony by noting that Plaintiff

applied for and collected unemployment during the period of her alleged disability. AR at 19.

ORDER AFFIRMING DENIAL OF BENEFITS - 7

"[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime . . . ." *Carmickle*, 533 F.3d at 1161-62 (citing *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988)). Here, as the ALJ noted, Plaintiff explicitly certified that she was available for full-time work, marking "no" in response to the question "[i]s there any reason you cannot seek or accept full-time work." AR at 403. The ALJ therefore reasonably rejected Plaintiff's symptom testimony because she held herself out as available for full-time work in order to collect unemployment benefits. *See Fennell v. Berryhill*, 721 F. App'x 652, 655 (9th Cir. 2018).

       4.     <u>Plaintiff's Testimony Was Not Clearly Inconsistent with Her Daily Activities and Statements to Her Medical Providers</u>

The ALJ last rejected Plaintiff's testimony because it was inconsistent with Plaintiff's activity level and other statements to her medical providers. *See* AR at 19-20. Although the ALJ's analysis is not persuasive, any error is ultimately harmless because the ALJ provided four other valid reasons for discounting Plaintiff's testimony. *See Carmickle*, 533 F.3d at 1162 (holding that where an ALJ provides at least one valid reason supported by substantial evidence for discounting a claimant's testimony, the inclusion of other erroneous reasons is harmless). The ALJ thus did not harmfully err in discounting Plaintiff's symptom testimony.

**B.    The ALJ Did Not Err in Evaluating the Medical Evidence**

Plaintiff further argues that the ALJ erred in evaluating the medical evidence. Pl. Op. Br. at 5-11. Plaintiff raises this argument as if to apply it to the ALJ's treatment of all medical opinions in the record, but only discusses with specificity the opinions of Dr. Harrison and, to a lesser extent, Dr. Staley. *See id.* The Court will not address the ALJ's treatment of the opinions Plaintiff has not specifically discussed because Plaintiff has not identified any particular errors the ALJ committed with respect to those opinions. *See Carmickle*, 533 F.3d at 1161 n.2 (noting that the court "'ordinarily will not consider matters on appeal that are not specifically and

1  distinctly argued in an appellant's opening brief'") (quoting *Paladin Assocs., Inc. v. Mont. Power*

2  *Co.*, 328 F.3d 1145, 1164 (9th Cir. 2008)) *see also Molina*, 674 F.3d at 1111 (holding that the

3  burden of showing harmful error falls on the party attacking an agency's determination) (citing

4  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

5      1.    <u>The ALJ Did Not Err in Discounting the Opinions of Dr. Harrison</u>

6      Dr. Harrison was Plaintiff's treating provider.  *See* AR at 592-630.   He issued several

7  opinions over the course of his treatment, each of which the ALJ discounted.  *See id.* at 20-24.

8  An ALJ must provide "specific and legitimate reasons that are supported by substantial evidence

9  in the record" to reject the contradicted opinions of a treating physician.  *See Lester v. Chater*, 81

10  F.3d 821, 830-31 (9th Cir. 1996) (citing *Andrews*, 53 F.3d at 1042).  The ALJ can satisfy this

11  requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical

12  evidence, stating his interpretation thereof, and making findings."  *Reddick v. Chater*, 157 F.3d

13  715, 725 (9th Cir. 1998) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  The

14  Court may draw "specific and legitimate inferences from the ALJ's opinion."  *Magallanes*, 881

15  F.2d at 755.

16      The ALJ addressed each of Dr. Harrison's opinions separately.  *See* AR at 20-24.  The

17  Court will do the same, except where the ALJ's reasons for rejecting opinions matched, in which

18  case the Court addresses the opinions together.

19          *a.    Dr. Harrison's January 2006 Opinion*

20      In January 2006, Dr. Harrison signed a form stating that Plaintiff was permanently

21  disabled due to long thoracic nerve mononeuropathy.  *Id.* at 569-70.  The ALJ rejected this

22  opinion because: (1) it was given more than four years prior to the alleged onset date; (2) it was

23  conclusory, giving no assessment of Plaintiff's RFC; and (3) it addressed Plaintiff's condition in

1  terms of L&I standards, which differ from the Social Security regulations.  *Id.* at 20-21.

2        The ALJ's first reason for rejecting Dr. Harrison's January 2006 opinion was sufficiently

3  specific and legitimate.  "Medical opinions that predate the alleged onset of disability are of

4  limited relevance."  *Carmickle*, 533 F.3d at 1165 (citing *Fair*, 885 F.2d at 600); *see also Johnson*

5  *v. Astrue*, 303 F. App'x 543, 545 (9th Cir. 2008) (affirming ALJ's rejection of medical opinions

6  that were remote in time, and reliance on more recent opinions).  This is particularly true here

7  because, as the ALJ reasonably found, Plaintiff successfully returned to work full-time after Dr.

8  Harrison's January 2006 opinion.  *See* AR at 21, 447-48.

9        The ALJ's second reason for rejecting Dr. Harrison's January 2006 opinion was also

10  specific and legitimate.  An ALJ "need not accept the opinion of any physician, including a

11  treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

12  findings."  *Thomas*, 278 F.3d at 957; *see also Smith v. Comm'r Soc. Sec. Admin.*, 602 F. App'x

13  390, 391 (9th Cir. 2015) (holding that the fact that a treating physician's opinion was conclusory

14  was a clear and convincing reason to reject the opinion).  Dr. Harrison's January 2006 opinion

15  stated only that Plaintiff had permanent pain and dysfunction due to her thoracic neuropathy.

16  *See* AR at 569-70.  That is clearly a conclusory statement, and the ALJ reasonably rejected it

17  because it "d[id] not help assess [Plaintiff's] residual functional capacity given her condition."

18  *Id.* at 20.

19        The ALJ's third reason for discounting Dr. Harrison's 2006 opinion is insufficient.  The

20  ALJ is correct that different standards apply when evaluating disability in workers'

21  compensation claims as opposed to Social Security disability claims.  *See Desrosiers v. Sec'y of*

22  *Health & Human Servs.*, 843 F.2d 573, 576 (9th Cir. 1988) (noting differences between state

23  workers' compensation and Social Security disability schemes).  But the fact that a doctor's

1 opinion was originally rendered in the context of a workers' compensation claim or couched in

2 workers' compensation terminology is not, standing alone, an adequate basis to reject the

3 doctor's opinion. *See Bowser v. Comm'r of Soc. Sec.*, 121 F. App'x 231, 242 (9th Cir. 2005)

4 ("Notwithstanding the variations in the rating schemes [between workers' compensation and

5 Social Security], . . . the ALJ may not ignore a doctor's medical opinion merely because it was

6 issued in a workers' compensation context."); *Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105-06

7 (C.D. Cal. 2002). Nonetheless, any error here was harmless because the ALJ gave two other

8 specific and legitimate reasons for rejecting Dr. Harrison's January 2006 opinion. *See Molina*,

9 674 F.3d at 1115.

10      *b. Dr. Harrison's October and December 2006 Opinions*

11   In October 2006, Dr. Harrison signed a "Doctor's Estimate of Physical Capacities." AR

12 at 616. Dr. Harrison opined that Plaintiff was limited in her right arm to lifting, carrying, and

13 reaching five pounds. *Id.* Dr. Harrison signed a similar "Physician's Estimate of Current

14 Physical Capacities" in December 2006. *Id.* at 574. Dr. Harrison opined that Plaintiff was

15 limited to occasional repetitive arm use, never reaching, never climbing, and occasional pushing,

16 pulling, lifting, and carrying 10 pounds. *Id.*

17   The ALJ gave each of these opinions minimal weight. *Id.* at 21. The ALJ reasoned that

18 each opinion "was provided years before the alleged onset date and d[id] not account for the fact

19 that the claimant's condition substantially improved following physical therapy and that she was

20 ultimately able to return to the workforce full-time following retraining." *Id.* at 21. This is the

21 same logic as the ALJ's first reason for rejecting Dr. Harrison's January 2006 opinion, and is

22 equally legitimate here. *See supra* Part III.B.1.a.

23 ///

1                    *c.*        *Dr. Harrison's Treatment Notes from May 2011 to July 2012*

2         The ALJ treated Dr. Harrison's treatment notes from May 2011 to July 2012 as

3   statements of opinion.  *See* AR at 22, 532, 535, 537-38, 597.  In those notes, Dr. Harrison opined

4   that Plaintiff's condition was fixed and stable, but that she likely would not completely recover.

5   *See id.* at 597.

6         The ALJ gave Dr. Harrison's 2011-12 opinion some weight.  *Id.* at 22.  The ALJ

7   discounted the opinion because it did not include any functional limitations, and "was strictly

8   made for purposes of [Plaintiff's] L&I claim, which is governed by an entirely different set of

9   regulations than Social Security."  *Id.*  These mirror the ALJ's second and third reasons for

10  rejecting Dr. Harrison's January 2006 opinion.  *See supra* Part III.B.1.a.  As with that opinion,

11  the ALJ reasonably discounted Dr. Harrison's 2011-12 opinion because it did not include any

12  functional limitations.  *See Thomas*, 278 F.3d at 957; *Smith*, 602 F. App'x at 391.  The ALJ erred

13  in discounting Dr. Harrison's 2011-12 opinions for being made in the context of Plaintiff's

14  workers' compensation claim.  *See Bowser*, 121 F. App'x at 242; *Booth*, 181 F. Supp. 2d at

15  1105-06.  The ALJ's rejection of Dr. Harrison's 2011-12 opinion for failing to include functional

16  limitations is sufficiently legitimate to overcome her erroneous reason, and thus the ALJ did not

17  harmfully err in discounting Dr. Harrison's 2011-12 opinion.  *See Molina*, 674 F.3d at 1115.

18                    *d.*        *Dr. Harrison's 2013 Opinion*

19        In August 2013, Dr. Harrison completed a physical functional evaluation.  AR at 546-48.

20  He opined that Plaintiff was unable to reach overhead or push, pull, or lift greater than 20

21  pounds.  *Id.* at 547.  Dr. Harrison further opined that Plaintiff was markedly limited in her ability

22  to perform basic work activities involving lifting, carrying, handling, pushing, pulling, or

23  reaching.  *Id.*

ORDER AFFIRMING DENIAL OF BENEFITS - 12

1    The record also includes a Department of Social and Health Services disability/incapacity

2    determination (the "DSHS Determination"), dated September 10, 2013, which is unsigned. *See*

3    *id.* at 544-45. That form, which was included with Dr. Harrison's August 2013 evaluation,

4    indicates that Plaintiff was limited to less than sedentary work, as she was unable to lift 10

5    pounds, and unable to frequently lift or carry even small items such as folders or small tools. *Id.*

6    at 544.

7         The ALJ gave minimal weight to Dr. Harrison's 2013 opinion and the DSHS

8    Determination. *Id.* at 22. She gave two reasons for this: (1) Dr. Harrison's 2013 opinion was

9    inconsistent with his treatment notes; and (2) Dr. Harrison's 2013 opinion relied too heavily on

10   Plaintiff's subjective reports, which the ALJ had already discounted. *See id.*

11        The ALJ's first reason is sufficiently specific and legitimate. An ALJ may discount a

12   doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical

13   findings. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009);

14   *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The ALJ reasonably determined that

15   although Dr. Harrison opined that Plaintiff was significantly limited in her ability to perform

16   many basic work activities, his records showed only mild findings. *See* AR at 22. Dr. Harrison

17   noted in July 2012 that Plaintiff tolerated her right shoulder and upper back pain well. *See id.* at

18   22, 597. Dr. Harrison similarly noted that "[f]indings at [Plaintiff's] last visit were mild," and

19   that she had "[n]o significant muscular atrophy." *Id.* at 597.

20        The ALJ's second reason for discounting Dr. Harrison's 2013 opinion and the DSHS

21   Determination is similarly valid. "An ALJ may reject a treating physician's opinion if it is based

22   'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."

23   *Tommasetti*, 533 F.3d at 1041 (quoting *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602

(9th Cir. 1999)). Here, the ALJ reasonably determined that Dr. Harrison's functional restrictions were not adequately supported by physical findings, as explained above. As a result, the ALJ reasonably "conclude[d] that Dr. Harrison was basing his opinion on [Plaintiff's] subjective reports of symptoms," which the ALJ found unreliable. *See* AR at 22. The ALJ thus did not err in rejecting Dr. Harrison's 2013 opinion and the DSHS Determination.

### e. Dr. Harrison's 2014 Opinion

In June 2014, Dr. Harrison issued his most recent opinion. *Id.* at 631-33. For the first time, Dr. Harrison opined that Plaintiff was limited to standing for two to three hours and walking for three hours in a normal eight-hour work day. *Id.* at 631. Dr. Harrison further opined that Plaintiff would need to be able to shift positions among sitting, standing, and walking at will every 30-45 minutes. *Id.* Dr. Harrison opined that Plaintiff could never climb, could occasionally bend and stoop, and could rarely kneel, crouch, or crawl. *Id.* Dr. Harrison opined that Plaintiff could frequently lift up to five pounds, occasionally lift six to 20 pounds, and never lift 21 pounds or more. *Id.* at 632. He opined that Plaintiff was limited to occasional fine or gross manipulation, and rare reaching. *Id.* Dr. Harrison opined that Plaintiff could rarely use her right upper extremity to push or pull. *Id.* Finally, he opined that Plaintiff would require one five minute rest period per hour, and would miss about two days of work per month due to her impairments. *Id.* at 633.

The ALJ gave minimal weight to Dr. Harrison's 2014 opinion. *See id.* at 23. Much like Dr. Harrison's 2013 opinion, the ALJ reasoned that the 2014 opinion was inconsistent with Dr. Harrison's examination findings, and too heavily based on Plaintiff's subjective reports. *Id.* at 23-24.

Once again, the ALJ reasonably rejected Dr. Harrison's 2014 opinion for being

inconsistent with his exam findings. *See Valentine*, 574 F.3d at 692-93. As the ALJ noted, Dr. Harrison reported only mild physical findings and no significant muscular atrophy in 2012. *See* AR at 23, 597. Dr. Harrison found that Plaintiff had normal upper extremity strength, normal range of motion bilaterally, and full grip strength. *Id.* at 23-24, 593. Moreover, nothing in Dr. Harrison's treatment notes indicated a basis for standing and walking limitations. *Id.* at 24.

The ALJ's second reason for discounting Dr. Harrison's 2014 opinion is the same as her second reason for discounting Dr. Harrison's 2013 opinion, and is valid for the same reasons. *See supra* Part III.B.1.d. The ALJ thus did not err in discounting Dr. Harrison's 2014 opinion.

2.      The ALJ Did Not Err in Discounting the Opinions of Dr. Staley

Dr. Staley reviewed Plaintiff's claims as part of the SSA's reconsideration of Plaintiff's disability benefits applications. *See* AR at 162-66, 170-74. Dr. Staley opined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently; sit, stand, and/or walk for about six hours in a normal eight hour work day; occasionally push or pull with her right shoulder; frequently climb ramps or stairs; never climb ropes, ladders, or scaffolds; never crouch; and could not lift her right shoulder above shoulder height. *Id.* at 164-65, 172-73.

The ALJ gave Dr. Staley's opinions some weight. *Id.* at 22. The ALJ explained that "[l]ooking at the evidence as a whole, I conclude that if [Plaintiff] were limited to lifting and handling only 10 pounds frequently and [five] pounds occasionally, she would have greater ability to reach laterally and overhead." *Id.* at 23. The ALJ justified her position by finding that Dr. Staley's opinions were inconsistent with the objective medical findings and Plaintiff's daily activities. *Id.* at 22-23.

The ALJ's first reason for discounting Dr. Staley's opinions—that they were inconsistent with the objective medical findings—passes muster. *See Batson v. Comm'r of Soc. Sec. Admin.*,

359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a physician's opinion may be rejected where it is contradicted by other medical evidence in the record).  As the ALJ noted, Dr. Harrison reported that Plaintiff tolerated her pain well, had mild physical findings, and had no significant muscular atrophy.  *See* AR at 22-23, 597.  Moreover, the ALJ reasonably noted that the medical record showed no changes in Plaintiff's condition, and that her pain was adequately controlled with her medication.  *See id.* at 23, 597, 755-91; *see also Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that impairments that can be effectively controlled by medication or treatment are not disabling).

The ALJ's second reason for discounting Dr. Staley's opinions—that it was inconsistent with her daily activities—is unconvincing.  The only activity to which the ALJ referred here was that Plaintiff "reported activities of daily living such as childcare."  AR at 23.  However, the only childcare Plaintiff reported was that she would watch her granddaughters, ages four and six, twice a week.  *See id.* at 101-02.  Plaintiff testified that she would sit and read with her granddaughters, microwave frozen meals for them, and watch them ride their bicycles in the driveway.  *Id.*  None of these activities are inconsistent with Dr. Staley's opinions.  The ALJ thus erred in rejecting Dr. Staley's opinions as inconsistent with Plaintiff's daily activities.

The ALJ's error was nonetheless harmless.  The ALJ gave a valid reason for discounting Dr. Staley's opinions, and that reason survives scrutiny despite the fact that the ALJ's second reason was invalid.  *See Molina*, 674 F.3d at 1115.  The ALJ thus did not harmfully err in discounting Dr. Staley's opinions.

**C.      The ALJ Did Not Err in Assessing Plaintiff's RFC**

Plaintiff's argument regarding the RFC is derivative of her other arguments as it is based on the claim that the ALJ failed to include all of the limitations arising from Plaintiff's symptom

testimony and the medical evidence in the RFC.  *See* Pl.'s Op. Br. at 13-14.  Because the Court

has found that the ALJ did not err in her assessment of Plaintiff's testimony and the medical

evidence, Plaintiff's argument fails.

**D.      The ALJ Did Not Err in Resolving Conflicts between the Vocational Expert's Testimony and the DOT**

Plaintiff's final argument is that the ALJ failed to resolve a conflict between the

vocational expert's testimony and the DOT.  At step five of the disability determination, "the

Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the

national economy that [a] claimant can perform despite [his] identified limitations.'"  *Zavalin v.*

*Colvin*, 778 F.3d 842, 846 (9th Cir. 2015) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th

Cir. 1995)).  "In making this determination, the ALJ relies on the DOT, which is the SSA's

'primary source of reliable job information' regarding jobs that exist in the national economy."

*Zavalin*, 778 F.3d at 845-46 (quoting *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990)).

The DOT raises a rebuttable presumption as to job classification.  *Johnson*, 60 F.3d at 1435-36.

ALJs also regularly rely on testimony from vocational experts to help identify jobs that a

claimant can perform based on their identified limitations.  *Zavalin*, 778 F.3d at 846.

Plaintiff argues that although the ALJ restricted her to lifting/carrying 10 pounds

occasionally and five pounds frequently, the jobs the vocational expert identified were classified

as light, which typically requires the ability to lift/carry 20 pounds occasionally and 10 pounds

frequently.  Pl. Op. Br. at 14-15.  "When there is an apparent conflict between the vocational

expert's testimony and the DOT—for example, expert testimony that a claimant can perform an

occupation involving DOT requirements that appear more than the claimant can handle—the

ALJ is required to reconcile the inconsistency."  *Zavalin*, 778 F.3d at 846 (citing *Massachi v.*

*Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007)); *accord* Social Security Ruling ("SSR") 00-4p,

2000 WL 1898704, at *2 (2000). Under SSR 00-4p, the ALJ must ask the vocational expert to explain the conflict and then determine whether the explanation is reasonable before relying on the vocational expert's testimony to determine disability. *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1003 (9th Cir. 2015) (citing *Zavalin*, 778 F.3d at 846).

The ALJ adequately resolved the conflict between the vocational expert's testimony and the DOT. During the hearing, the ALJ noted that her hypothetical to the vocational expert limited Plaintiff to lifting 10 pounds occasionally and five pounds frequently, and that light jobs usually require lifting up to 20 pounds occasionally. AR at 81. The vocational expert responded by explaining that the jobs he identified were classified as light because of the amount of standing they require as opposed to the amount of lifting required. *Id.* at 81-82. He noted that an usher, for example, is classified as light because the individual may have to stand for most of the day, but would not be required to carry more than something like a flashlight. *Id.* at 82. This was a reasonable explanation, and the ALJ did not err in accepting it. Accordingly, the ALJ did not err in resolving a conflict between the vocational expert's testimony and the DOT.

## IV.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED and the case is DISMISSED with prejudice.

DATED this 7th day of December, 2018.

ROBERT J. BRYAN
United States District Judge